**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSHUA DUNN,<br><br>  Plaintiff,<br><br>  v.<br><br>CANCER GENETICS, INC., GEOFFREY HARRIS, EDMUND CANNON, HOWARD MCLEOD, and FRANKLYN G. PENDERGAST,<br><br>  Defendants. | **CASE NO.:**<br><br>**COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS** |

Plaintiff Joshua Dunn ("Plaintiff"), by his attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, a stockholder of Cancer Genetics, Inc. ("CGI" or the "Company") brings this action against the members of CGI's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to StemoniX, Inc. ("StemoniX") and CGI Acquisition, Inc. ("Merger Sub").

2. On August 21, 2020, the Company announced that it had entered into a definitive agreement and plan of merger ("Merger Agreement"), by which Company will be acquired by StemoniX (the "Proposed Transaction"). Under the terms of the Merger Agreement: (i) Merger Sub will merge with and into StemoniX, with StemoniX surviving as a wholly-owned subsidiary of CGI; and (ii) CGI will issue a number of shares of CGI common stock to StemoniX such that

former StemoniX shareholders will own approximately 78% of the outstanding shares of common stock of CGI and shareholders of CGI will own approximately 22% (the "Merger Consideration").

3.  On October 16, 2020, Defendants authorized the filing of a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities & Exchange Commission. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the sale process; (ii) the financial analyses performed by the Company's financial advisor, H.C. Wainwright & Co. ("Wainwright"), during the process leading up to the execution of the Merger Agreement; (iii) the Company's financial projections, as well as StemoniX's financial projections; and (iv) the terms of Wainwright's engagement. Accordingly, without additional information the Registration Statement is materially misleading in violation of federal securities laws.

4.  By unanimously approving the Proposed Transaction and authorizing the issuance of the Registration Statement, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Registration Statement was materially false and/or misleading. The Registration Statement is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

5.  The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company is headquartered in this District and the other Defendants either reside or have extensive contacts with the District; and (ii) Defendants have received substantial compensation in this District.

## PARTIES AND RELEVANT NON-PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of CGI common stock.

10. Defendant CGI is a Delaware corporation and maintains its principal executive offices at 201 Route 17 North, 2nd Floor, Rutherford, New Jersey 07070. CGI' common stock is traded on the NASDAQ Capital Market under the ticker symbol "CGIX."

11. Defendant Geoffrey Harris is Chairman of the Board of the Company.

12. Defendant Edmund Cannon is a director of the Company.

13. Defendant Howard McLeod is a director of the Company.

14. Defendant Franklyn G. Prendergast is a director of the Company.

15. Defendants referenced in ¶¶ 11 through 14 are collectively referred to as Individual Defendants and/or the Board.

16. Relevant non-party StemoniX is a Minnesota corporation and a party to the Merger Agreement.

**FURTHER SUBSTANTIVE ALLEGATIONS**

*Background of the Transaction*

17. Beginning in September 2019, CGI management interviewed four investment banking firms to assist it with exploring strategic options for CGI.

18. While this search for a banker was ongoing, CGI simultaneously opened informal discussions with four potential purchasers, to begin an assessment of valuation. As part of this process, CGI Board and management received one written indication of interest, however, details concerning this offer are omitted from the Registration Statement.

19. During early October 2019, CGI's management and the CGI Board engaged in specific discussions with four investment banking firms regarding terms of a potential engagement to assist CGI in conducting the formal strategic review and initiate the process of securing a transaction. Ultimately, on October 23, 2019, the Board unanimously approved the engagement of H.C. Wainwright & Co., LLC ("Wainwright") to represent CGI in its consideration of strategic alternatives.

20. On October 24, 2019, CGI issued a press release announcing, among other strategic actions, that CGI engaged Wainwright as its financial advisor to explore all strategic alternatives available to CGI. Following this announcement, Wainwright initiated a process of broad outreach to approximately 40 potential merger candidates. Wainwright asked that the first round of non-binding proposals to merge with CGI be submitted by November 25, 2019, indicating an interest to transact with CGI and initial valuation expectations.

21. CGI received five initial written proposals by the November 25, 2019 due date that were shared with the full CGI Board. Management and Wainwright commenced further discussions with each of the five parties, to clarify their proposals, and investigate options to improve upon the potential terms of the offers, and the CGI Board recommended further discussions with each of these five companies to progress the evaluation of each proposal.

22. On December 4, 2019, a representative of Northland Securities ("Northland") met with management of StemoniX to notify them of CGI's desire to pursue strategic alternatives.

23. In January 2020, CGI's management and its advisors met with management from the five separate parties for follow up meetings.

24. On early February, CGI management had meetings with a representative of Northland regarding how the CGI and StemoniX businesses were complementary on the basis of non-confidential information.

25. On February 27, 2020, CGI management, the CGI Board and its advisors met in person to have a full-day, in-depth review of 12 of the candidate companies that had either submitted a proposal or with whom CGI was in active discussions. At the conclusion of an allegedly thorough investigation and review by the CGI Board, the CGI Board recommended continuing to pursue three (all of which had active proposals pending) of the 12 merger opportunities. Additionally, the CGI Board also asked Wainwright and CGI management to broaden the search to include other healthcare technology companies not considered at the February 27 meeting, including StemoniX.

26. CGI ultimately declined the opportunity to merge with each of the three biotech merger candidates which it had determined to pursue at the February 27 meeting as the most attractive, due to financing risk and clinical risk associated with their development programs.

27. In April, May and June 2020, seven additional privately-held life science and other companies were introduced to CGI as potential merger partners. Given the prospects of the merger candidates' clinical programs and their respective strong management teams, CGI signed confidentiality agreements with each of these seven additional companies and subsequently received preliminary oral proposals from six prior to July 2020. During this period, CGI management, in consultation with Wainwright, determined that each of these seven companies did not represent the best opportunity for CGI to maximize value.

28. Ultimately, from the time Wainwright was engaged through June 2020, 26 companies entered into a confidentiality agreement with CGI and 2 companies provided unsolicited offers without entering into a confidentiality agreement, all expressing their interest in learning more about a transaction with CGI. Additionally, since the February 27, 2020 meeting, CGI had non-confidential discussions with another 12 companies.

29. While discussions with those 26 parties petered out, discussions between StemoniX and CGI picked up throughout March, April, and May. These discussions led CGI, on June 3, 2020, to send to StemoniX a draft, non-binding letter of intent, which outlined the potential terms of a reverse merger transaction, including pro-forma post-closing equity ownership of 67% for StemoniX shareholders and 33% for CGI stockholders. In its return draft, StemoniX management specified a pro-forma post-closing equity ownership of 80% for StemoniX shareholders and 20% for CGI stockholders. In subsequent drafts, the percentages were negotiated and eventually reached 78% and 22%, respectively. Additionally, the post-merger management composition was discussed in detail, and the CGI Board was apprised of the rationale for the selected management of the post-merger company, based on individual skills, expertise, relative experience and history with each of the two companies.

30. Throughout the months of July and August, StemoniX and CGI, and their respective representatives, conducted due diligence and continued to negotiate the proposed Merger Agreement and implied valuation, among other transaction terms.

31. On August 20, 2020, the CGI Board met for an update on the proposed transaction and to consider the approval of the contemplated merger. At the meeting, representatives of Lowenstein provided a detailed review of the material terms of the Merger Agreement and ancillary agreements. CGI's management reviewed certain due diligence on StemoniX, noting no issues outstanding. Following presentations and discussions, the CGI Board unanimously determined that the transactions contemplated by the Merger Agreement, including the merger and the issuance of shares of CGI Common Stock to the security holders of StemoniX pursuant to the Merger Agreement, were fair to, advisable and in the best interest of CGI and CGI's stockholders, approved and declared advisable the Merger Agreement and the transactions contemplated therein, including the merger, and determined to recommend, upon the terms and subject to the conditions of the Merger Agreement, that CGI's stockholders vote to approve the Merger Agreement and the transactions contemplated therein.

32. On the evening of August 21, 2020, the Merger Agreement was signed. On August 24, 2020, CGI and StemoniX issued a joint press release publicly announcing the signing of the Merger Agreement.

*The Press Release*

33. On August 24, 2020, the Company and Parent issued a joint press release announcing the Proposed Transaction. The Press Release read in relevant part:

> RUTHERFORD, NJ and MAPLE GROVE, MN, August 24, 2020 — Cancer Genetics, Inc. (the "Company") (Nasdaq: CGIX), and StemoniX, Inc., today announced the entry into a definitive merger agreement. Cancer Genetics is a leader in drug discovery and preclinical oncology and immuno-oncology

services. StemoniX, a private company, is a leader in developing high-throughput disease-specific human organoid platforms integrated with leading-edge data science technologies. Under the terms of the merger agreement, StemoniX will merge with a newly formed subsidiary of Cancer Genetics in an all-equity transaction. Upon shareholder approval, the combined company expects to remain listed on the Nasdaq Stock Market. StemoniX will retain its name and become a wholly-owned subsidiary of Cancer Genetics.

The transaction will position the combined company to harness the synergies between two critical modalities of drug discovery and development - advanced animal models and relevant human high-throughput organoid platforms. The resulting integration of scientific and technology-based expertise, skilled management teams, and ability to offer customers an end-to-end platform will de-risk and accelerate development of preclinical and clinical pipelines for biopharma partners as well as for the proprietary pipeline of the combined company. In combination, Cancer Genetics and StemoniX currently enjoy partnerships and R&D relationships with dozens of global pharmaceutical and biotechnology companies.

"The process of discovering and developing a new drug candidate takes years and comes with a price tag of hundreds of millions - or even billions - of dollars. However, we are at unique time in the drug discovery industry as the convergence of technological innovations in both biology and software will transform conventional workflows in time and accuracy. To convert the time-consuming and labor-intensive process of developing a drug for market, we now look to supplement traditional discovery and drug approval mechanisms to include humanized cell-based assays with artificial intelligence (AI) along with our core *vivo*Pharm business. Given that our strategy and approach are strongly aligned with those of StemoniX, we are pleased to have moved forward with this proposed transaction," stated Jay Roberts, Chief Executive Officer of Cancer Genetics.

"The pharma industry and society are at a critical pivot point. Viral pandemics and diseases lacking treatments require a new way of innovation. The proposed merger expects to expand our ability to engage with a larger audience of potential partners and expand our internal capabilities as we deliver on our mission to rapidly discover the safest and most effective therapeutics on behalf of our partners and our shareholders. The mission will stay consistent - allow scientists to quickly and economically conduct high-throughput toxicity and drug development studies in ready-to-assay plates containing functional microOrgans®," stated Ping Yeh, Chief Executive Officer of StemoniX.

**The Registration Statement Misleads CGI Stockholders by Omitting Material Information**

34.     On October 16, 2020, the Company filed the materially misleading and incomplete

Registration Statement with the SEC. Designed to convince the Company's stockholders to vote

in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the sale process, the Company's financial projections, and the financial analyses of Wainwright.

### *Material Omissions Concerning the Sale Process*

35. The Registration Statement notes that during the sale process, the Company had interest from a number of potential suiters. Specifically, during the process leading up to the execution of the Merger Agreement, the Company received indications of interest and proposals from: (i) four potential purchasers of the viviPharm business unit; (ii) five potential acquirers of the Company by November 25, 2019; (iii) twelve potential acquirers of the Company by February 27, 2020; (iv) two additional potential acquirors that provided unsolicited offers without entering into a confidentiality agreement; and (v) an additional twelve potential acquirors following the February 27, 2020 meeting.

36. While the Registration Statement provides some vague information concerning the existence of these competing proposals, the Registration Statement fails to disclose the terms and values of the indications of interest and proposals received during the process leading up to the execution of the Merger Agreement. Accordingly, CGI stockholders are unable to evaluate and compare the merger consideration to be received as part of the StemoniX merger to any of the competing proposals that the company received. Just as worrisome is the fact that the Registration Statement omits to disclose whether any of these competing counterparties have been and will be hindered or even completely precluded from making a superior proposal.

37. The Registration Statement indicates that the Company entered into confidentiality agreements with a number of potentially interested parties, however, the terms of these confidentiality agreements, including whether they contain standstill provisions or "don't ask,

don't waive" ("DADW") terms, are completely undisclosed. Without further information regarding the terms of these agreements, and whether they contained standstill and/or DADW provisions, including whether those provisions have fallen away up or are still in effect, Company stockholders are unable to properly evaluate the ability of these parties that earlier expressed interest in acquiring the Company to offer them a better deal. If the confidentiality agreements contained standstill and/or DADW provisions, then those counterparties may be hindered or even completely precluded from making a superior proposal. The extent of such hindrances is material information of which the stockholders must be informed before voting on the Proposed Transaction.

38.     Thus, the omission of this information renders the descriptions of the confidentiality agreements the Company entered into materially incomplete and misleading, as the failure to disclose the existence of standstill and/or DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could make a superior proposal. Clearly, any reasonable CGI shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer as significant information.

39.     Accordingly, without further information regarding the terms of the confidentiality agreements, the Company's stockholders are being misled into assuming that these other entities, which were actively interested in acquiring the Company, and had already elected to submit a bid to acquire the Company, could make an offer to acquire the Company if they so choose – when they may be contractually precluded from doing so. It is therefore vital that CGI stockholders are provided material information regarding the respective indications of interest that CGI received,

and the terms of the confidentiality agreements that might presently be operating to prevent these interested parties from stepping forward with a superior proposal.

### *Material Omissions Concerning The Financial Projections*

40. Pursuant to the Merger Agreement, CGI will issue a number of shares of CGI common stock to StemoniX such that former StemoniX shareholders will own approximately 78% of the outstanding shares of common stock of CGI and shareholders of CGI will own approximately 22%. However, the Registration Statement fails to disclose the Company's financial projections, as well as StemoniX's financial projections.

41. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Here, without disclosure of the Company's financial projections and/or StemoniX's financial projections, the Registration Statement violates SEC regulations and materially misleads CGI stockholders because it omits the actual projections and financial metrics used by Wainwright and reviewed by the Board in making its decision. This is particularly important because CGI stockholders have no other way to evaluate the suitability of this proposed merger. The Registration Statement fails to disclose the financial analyses performed by the Company's financial advisor, Wainwright, during the process leading up to the execution of the Merger Agreement. Accordingly, not only do CGI stockholders lack a basis to project the future financial performance of the Company absent the financial projections, but also, they lack any details concerning any financial analyses conducted by Wainwright. Without this information CGI stockholders are unable to evaluate the appeal of the merger with StemoniX.

*Material Omissions Concerning Wainwright's Conflicts*

42. With regard to the potential conflicts of interest faced by Wainwright, the Registration Statement fails to adequately disclose any details concerning the current and prior relationship that Wainwright had with both StemoniX and the Company.

43. Specifically, the Registration Statement fails to disclose the terms of Wainwright's engagement, including: (i) the amount of compensation Wainwright has received or will receive in connection with its engagement; (ii) the amount of Wainwright's compensation that is contingent upon consummation of the Proposed Transaction; (iii) whether Wainwright has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by Wainwright for providing such services.

44. Disclosure of any compensation received, or to be received, as a result of the relationship between a financial advisor and either the subject company or the target company is material to CGI stockholders. Without this information, it is impossible for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts and opinions. A financial advisor's own proprietary financial interest in a transaction must be carefully considered when assessing how much credence to give its analyses and opinions. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the merger to the shareholders, might have. This is especially true when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to them—given their overall economic interest—than only approving a deal at truly fair price to shareholders.

45. Accordingly, CGI stockholders must be provided enough information so that they themselves can evaluate Wainwright's past relationship with StemoniX and its engagement on behalf of CGI in order to have a materially complete sense of the conflicts of interests operating in the background. The failure to do so here, is all the more worrisome considering the lack of disclosures issued by Wainwright concerning its efforts on behalf of CGI. As noted above, the Registration Statement omits to disclose any details concerning any financial analyses conducted by Wainwright.

46. As the Registration Statement omits to disclose details regarding Wainwright's past relationship with StemoniX, or to disclose the full nature of Wainwright's past and current relationship with CGI and the work it conducted, a full disclosure is necessary for CGI stockholders to properly evaluate the potential conflicts of interest faced by the financial advisor and understand what factors might influence the financial advisor's analytical efforts.

47. Based on the foregoing, CGI public shareholders are being materially misled and lack critical information necessary to evaluate the Proposed Transaction.

48. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and CGI**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary

to make the statements therein not materially false or misleading.  CGI is liable as the issuer of these statements.

65. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## **COUNT II**

### **Claim for Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of CGI within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers

and/or directors of CGI and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: November 19, 2020 　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　By: /s/ *Donald J. Enright*
　　　　　　　　　　　　　　　　　　　　　Donald J. Enright
　　　　　　　　　　　　　　　　　　　　　**LEVI & KORSINSKY, LLP**
　　　　　　　　　　　　　　　　　　　　　1101 30th Street, N.W., Suite 115
　　　　　　　　　　　　　　　　　　　　　Washington, DC 20007
　　　　　　　　　　　　　　　　　　　　　Tel: (202) 524-4290
　　　　　　　　　　　　　　　　　　　　　Fax: (202) 333-2121
　　　　　　　　　　　　　　　　　　　　　Email: denright@zlk.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*